WESTCHESTER DAY SCHOOL,
Plaintiff–Appellee,

v.

VILLAGE OF MAMARONECK, The Board of Appeals of the Village of Mamaroneck, Mauro Gabriele, George Mgrditchian, Peter Jackson, Barry Weprin and Clark Neuringer, in Their Official Capacity as Members of the Board of Appeals of the Village of Mamaroneck, and Antonio Vozza, in His Official Capacity as a Former Member of the Board of Appeals of the Village of Mamaroneck, Defendants–Appellants.

Docket No. 03–9042.

United States Court of Appeals, Second Circuit.

Argued: March 1, 2004.

Decided: Sept. 27, 2004.

Joel C. Haims, Morrison & Foerster LLP, New York, N.Y. (Jack C. Auspitz and Andrea B. Aronoff, Morrison & Foerster LLP; Stanley D. Bernstein, Berstein Liebhard & Lifshitz, LLP, New York, NY, on the brief), for Plaintiff–Appellee.

Kevin J. Plunkett, Village Attorney, Village of Mamaroneck, N.Y. (Robert Hermann, Darius P. Chafizadeh, and Lino J. Sciarretta, Thacher Proffitt & Wood LLP, White Plains, NY; Joseph C. Messina, Mamaroneck, NY, on the brief), for Defendants–Appellants.

Peter D. Keisler, Assistant Attorney General, Washington, D.C. (David N. Kelley, United States Attorney for the Southern District of New York; Gregory G. Katsas, Deputy Assistant Attorney General; Mark Stern and Lowell V. Sturgill Jr., Attorneys, Appellate Staff Civil Division; Sarah E. Light and Sara L. Shudofsky, Assistant United States Attorneys, on the brief), for intervenor United States of America.

Riele J. Morgiewicz, Albany, NY, for amicus curiae New York State Conference of Mayors and Municipal Officials, in support of Defendant–Appellants.

Michael D. Zarin, Zarin & Steinmetz, White Plains, NY, for amicus curiae Save Orienta's Unique Neighborhood, in support of Defendant–Appellants.

Anthony R. Picarello, Jr., The Beckett Fund For Religious Liberty, Washington, D.C. (Roman P. Storzer and Derek L. Gaubatz, on the brief), for amici curiae the Becket Fund for Religious Liberty, the Council for Christian Colleges and Universities, the Council for American Private Education, and the Association of Christian Schools International, in support of Plaintiff–Appellee.

Mitchell A. Karlan, Gibson, Dunn & Crutcher LLP, New York, NY, for amici curiae The Anti–Defamation League, The American Jewish Committee, The American Jewish Congress, The Union of Orthodox Jewish Congregations of America, and The Jewish Council for Public Affairs, in support of Plaintiff–Appellee.

Von G. Keetch, Kirton & McConkie, Salt Lake City, UT (Alexander Dushku, Matthew K. Richards, and Jason W. Beutler, on the brief), for amici curiae The United States Conference of Catholic Bishops; The Church of Jesus Christ of Latter–Day Saints; The General Council on Finance and Administration of the United Methodist Church; Clifton Kirkpatrick, as stated Clerk of the General Assembly of Presbyterian Church (U.S.A.); The Ethics & Religious Liberty Commission of the Southern Baptist Convention; The First Church of Christ, Scientist; Foundation for the Preservation of the Mahayana Tradition; the International Church of the Foursquare Gospel; The United House of Prayer for All People of the Church on the Rock of the Apostolic Faith and the Worldwide Church of God, in support of Plaintiff–Appellee.

Before: VAN GRAAFEILAND, LEVAL, and CALABRESI, Circuit Judges.

LEVAL, Circuit Judge.

Defendants the Zoning Board of Appeals of the Village of Mamaroneck (the "Board"), its members, and the Village of Mamaroneck (the "Village"), appeal from the grant of summary judgment by the United States District Court for the Southern District of New York (William C. Conner, *J.*) in favor of plaintiff Westchester Day School ("WDS" or the "School"). The

School brought this action alleging that the Board's denial of its application to construct an additional building on its campus and to make renovations and improvements to existing buildings violated § 2(a)(1) of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc(a)(1). The complaint alleged that in denying the construction permit requested by the School, the Board violated RLUIPA by "implement[ing] a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person . . . or institution," without the justification of a compelling governmental interest employed in the least restrictive manner. 42 U.S.C. § 2000cc(a)(1). The district court granted summary judgment in the School's favor, ordering the Board to grant the School's application. We believe the court's judgment depended on findings of fact upon which a factfinder could reasonably disagree. Accordingly, we vacate the judgment.

## Background

For over fifty years, WDS has operated as an Orthodox Jewish day school in the Orienta Point neighborhood of the Village of Mamaroneck in Westchester County, New York. In the 2002–2003 academic year, the School offered its coeducational curriculum of secular and Judaic studies, daily prayer, and observance of Jewish practices and customs to 470 enrolled students.

In October 2001, the School submitted an application to the Board for modification of the special permit under which it operates, to allow construction of an additional school building, along with renovations and improvements to the existing facilities (the "Application"). The plan provided for 25 additional classrooms and a multipurpose room in the new building,

and the re-dedication of 13 existing classrooms for use as library space, computer rooms, and administrative offices. The modifications were designed to modernize classrooms and to reduce class size, as well as give space for a music room, an art room, computer rooms, small group instruction rooms (for speech therapy and other tutoring needs), a *beit midrash* (a library and study center dedicated to Jewish scholarship), and a new *shul*, or chapel, for prayer. The Application provided for the addition of eighty-one parking spaces. In summary, a portion of the facilities to be built or modified, such as the *beit midrash* and *shul*, were intended specifically for religious exercises, while the major part of the plan involved secular facilities, such as classrooms, rooms for computer and art, smaller rooms for tutoring, a cafeteria, and administrative offices.

The Board initially issued a "negative declaration" under New York's State Environmental Quality Review Act ("SEQRA"), which would have allowed the application to proceed to the next phase of consideration without requiring the School to submit an Environmental Impact Statement. After the manifestation of neighborhood opposition, the Board rescinded the "negative declaration." The School then brought this action, alleging that the Board's rescission of the negative declaration was unlawful. The court granted the School's motion for partial summary judgment, finding that the rescission violated SEQRA, *Westchester Day Sch. v. Vill. of Mamaroneck*, 236 F.Supp.2d 349 (S.D.N.Y. 2002), and the Application proceeded to a special permit phase. The Board held hearings between January and May of 2003, and, on May 13, 2003, passed a resolution denying the Application. Among reasons cited by the Board for denying the permit were: the potential for increased intensity of use due to increased enrollment at WDS; traffic concerns relating to

increased volume and the effect on nearby intersections; and insufficient provision for parking.

WDS then amended its complaint to challenge the lawfulness of the denial and moved for partial summary judgment. The district court granted summary judgment in favor of the School, directing that the Board grant immediate and unconditional approval of the School's application. *Westchester Day Sch. v. Vill. of Mamaroneck*, 280 F.Supp.2d 230, 243 (S.D.N.Y. 2003). Defendants brought this appeal.

## Discussion

RLUIPA prohibits a governmental entity from applying a land use regulation "in a manner that imposes a substantial burden on the religious exercise of a person . . . or institution, unless the government demonstrates that imposition of the burden . . . is in furtherance of a compelling governmental interest; and . . . [the burden imposed] is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1).[1] The statute defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and provides further that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered . . . religious exercise." *Id.* § 2000cc–5(7)(A), (B).

The district court based its conclusion that WDS was entitled to summary judgment on the following reasoning and findings. First, the court stressed that the Board's action was a "complete denial,"

*Westchester Day Sch.*, 280 F.Supp.2d at 241, 243 & n. 9, or denial of the application "in its entirety," *id.* at 233, 243, apparently implying that the Board's action foreclosed reconsideration of all aspects of the proposal, so that no modification of the proposal would be considered.

Second, although the great majority of the proposed construction was of facilities designed to fulfill the secular functions of a school, the court found that "religious exercise," as protected by RLUIPA, was at stake in all aspects of the proposed plan. The court explained that the proposed modifications were "necessary . . . in furtherance of [the School's] religious mission of educating students with a dual curriculum of secular and Judaic studies," and concluded that the School's inability to construct even the facilities devoted exclusively to secular use would "burden . . . the quality of religious education." *Westchester Day Sch.*, 280 F.Supp.2d at 241.

Putting together the first and second findings recited above, the court concluded that "complete denial" constituted a "substantial burden on religious exercise," thus raising the question whether the Board could show that the denial was in service of a "compelling government interest," accomplished by the least restrictive means. The court concluded that no "compelling government interest" was at stake for three reasons: (1) "traffic concerns [on which the Board relied in part] have never been deemed compelling government interests," *id.* at 242; (2) the court was "unpersuaded by the opinions" of the traffic experts on which the Board relied and

---

1. The statute sets forth, in relevant part:

   No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition

   of the burden on that person, assembly, or institution—

   (A) is in furtherance of a compelling governmental interest; and

   (B) is the least restrictive means of furthering that compelling governmental interest.

   42 U.S.C. § 2000cc(a)(1).

concluded that the lack of parking spaces would not result in a "direct and immediate threat to public ... welfare," *id.;* and (3) the court was "firmly convinced" that the Board's articulated reasons did not result from a "fair balancing" but were rather influenced by "public outcry, a paradigm of ... NIMBY (Not In My Backyard) syndrome," *id.* at 243.

Because the court's decision in the School's favor was a grant of summary judgment, the evidence must be construed in the light most favorable to the Board, drawing all reasonably permissible inferences in its favor, and the judgment may not be sustained unless the evidence, viewed in this light, compels judgment in favor of the School. *North River Ins. Co. v. Ace Am. Reins. Co.,* 361 F.3d 134, 139 (2d Cir.2004). We cannot agree with the district court that the record compels judgment in favor of the School. As to several findings essential to the court's conclusion, a factfinder could reasonably disagree. We are therefore obliged to vacate the judgment and remand for further proceedings.

### 1. *Complete denial*

It seems crucial to the district court's reasoning that the Board's ruling amounted to a "complete denial" of the School's proposal. Three times the court stressed the *completeness* of the denial to justify the conclusion that there was a "substantial burden on the free exercise of religion." *See Westchester Day Sch.,* 280 F.Supp.2d at 241 (necessity of modifications to school's religious mission made "defendants' *complete denial* of plaintiff's

Application a substantial burden on their exercise of religion" (emphasis added)); *id.* at 243 ("[W]e are firmly convinced that defendants' *complete denial* of WDS's Application was not based on any compelling governmental interest ..." (emphasis added)); *id.* ("[D]efendants have denied plaintiff's Application ... *in its entirety.* We conclude that this denial is a substantial burden on plaintiff's exercise of religion ...." (emphasis added)). While the court did not explain the significance of its emphasis on the *completeness* of the denial, it seems to imply a finding that the denial conclusively rejected the School's plans, leaving open no possibility that the Board might be amenable to resubmission of a modified application, addressing the problems the Board cited.[2]

If this is what the court meant, it explained no basis for the conclusion, much less for the conclusion that a factfinder could not reasonably find otherwise, so as to justify summary judgment. Reading the Board's resolution on its face, we do not see how it supports, much less compels, the conclusion that the Board's ruling was a "complete" rejection—one which foreclosed consideration of a modified plan. Several indications in the document suggest otherwise. For example, the penultimate sentence of the document stresses, "This denial exclusively addresses the future expansion of the school and its accessory uses ... *as they relate to this application*" (emphasis added). The words "as they relate to this application" seem expressly intended to imply that the Board does not foreclose the possibility of ap-

**2.** It is possible that by "complete denial" the court meant no more than a "denial" and implied nothing about the likelihood of substantial success on a modified resubmission. We think this unlikely, however. If the School could realistically realize a major part of its plan by resubmission of a modified

application, it seems unlikely that the court would have nonetheless concluded, without any discussion of the possible future realization of a major portion of the plan, that the denial constituted a substantial burden on religious exercise.

proving a modified application designed to cure the problems and deficiencies cited by the Board.

Furthermore, reasons specified for the denial support a possibility of cure by modification of non-religious features of the plan, such as parking and traffic flow, provision of further information, and the taking of additional procedural steps.

For example, with respect to parking, the resolution states that (1) "the applicant has failed to provide requisite information that would assist the Board in further addressing or understanding its position"; (2) "the parking spaces are less than those required for the day school alone"; (3) "no basis" was provided for the School's assessment of the parking requirements; and (4) additional parking spaces required to meet the perceived deficiency "would require a variance for the project as proposed," but "[n]o variance was ever requested or mentioned by the applicant."

With respect to the "intensity of use and the traffic [the expansion of the facility] will generate," the resolution adds: "Neither of these items have been conclusively addressed by the applicant, despite repeated questions regarding these issues." With respect to traffic, and the likely effect of the expansion on some intersections, the resolution notes "a significant gap in the traffic analysis" submitted by the School, as well as the possibility of a "willful attempt to provide inaccurate information," and a "total unwillingness of the applicant to provide enhanced studies when concerns were raised." The resolution's recapitulation of the history of the project notes further that the School "refused to consider relocation of the building to other portions of campus" to meet potential problems raised by the Board.

■ Read in its entirety, the Board's resolution seems to imply that the Board did not purport to pronounce the death knell of the School's proposed renovations in their entirety, but rather to deny only the application submitted, leaving open the possibility that a modification of the proposal, coupled with the submission of satisfactory data found to have been lacking in the earlier proceedings, would result in approval.

The district court's conviction that the denial was conclusive and definitive appears to have influenced significantly the court's ultimate conclusion that the denial represented a "substantial burden" on the exercise of religion. Needless to say, rejection of a submitted plan, while leaving open the possibility of approval of a resubmission with modifications designed to address the cited problems, is less likely to constitute a "substantial burden" than definitive rejection of the same plan, ruling out the possibility of approval of a modified proposal.[3]

The court's assessment of the complete, definitive nature of the Board's ruling may well be correct. But upon a grant of summary judgment, it makes no difference what the court believes the facts to be. The judgment may not properly be grant-

**3.** We recognize that in some circumstances denial of the precise proposal submitted may be found to be a "substantial burden," notwithstanding a board's protestations of willingness to consider revisions—for example, where the board's stated willingness is disingenuous, or cure of the problems noted by the board would impose so great an economic burden as to make amendment unworkable, or where the change demanded would itself constitute a burden on religious exercise. We have no need to specify here under what circumstances an initial denial might by itself constitute a substantial burden. Our ruling is required by the fact that the finding of "complete," i.e. definitive, denial here seems to have been essential to the court's conclusion that the denial constituted a substantial burden, but this finding is not compelled by the record so as to justify summary judgment.

ed (or upheld on appeal) unless the record compels each finding of a fact necessary to the judgment. The court gave no explanation why it believed the record, viewed in the light most favorable to the Board, compelled this aspect of its conclusion. Because we perceive that the finding of a complete denial was essential to the court's finding of "substantial burden," that reason alone would compel us to vacate the grant of summary judgment.

### 2. Substantial burden on religious exercise

We comment briefly on the standards that governed the district court's conclusion that the denial imposed a "substantial burden on religious exercise."

The submitted plan proposed to create rooms both for religious and secular purposes, the latter consisting primarily of classrooms and auxiliary facilities. The district court's reasoning did not depend in any way on whether the facilities to be constructed were to be devoted to a religious purpose. In the district court's view, the entire undertaking was religious. Because the school was a religious school attended by students who desired to receive education in a religious environment, the court found that the Board's denial of permission for improvement of facilities for education on secular subjects imposed a "burden on the quality of the religious education." *Westchester Day Sch.*, 280 F.Supp.2d at 241.

Because the School delivers a secular and religious education in a religious environment, the court reasoned that any program of the School to improve its facilities in a manner that would improve the students' overall educational experience would be protected by RLUIPA from the implementation of a land use regulation that would prevent its accomplishment. According to this logic, any improvement or enlargement proposed by a religious school to its secular educational and accessory facilities would be immune from regulation or rejection by a zoning board so long as the proposed improvement would enhance the overall experience of the students. Thus if two identically situated schools submitted functionally identical applications to a zoning board to rebuild and enlarge their gymnasium facilities, one being a religious school, the other a secular school, according to standards applied by the district court, the zoning board would be free to reject the application of the secular school but not that of the religious school, assuming the gymnasium would improve the experience of the students in the religious school.

Because the issue will arise in the court's future consideration of the case, we express doubt whether the protections of RLUIPA can be as broad as that. As a legislative accommodation of religion, RLUIPA occupies a treacherous narrow zone between the Free Exercise Clause, which seeks to assure that government does not interfere with the exercise of religion, and the Establishment Clause, which prohibits the government from becoming entwined with religion in a manner that would express preference for one religion over another, or religion over irreligion. As the Supreme Court has noted, " '[a] proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of neutrality toward religion,' favoring neither one religion over others nor religious adherents collectively over nonadherents." *Bd. of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 696, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) (quoting *Comm. for Pub. Ed. & Religious Liberty v. Nyquist*, 413 U.S. 756, 792–93, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973)). *See also Locke v. Davey*, 540 U.S. 712, 124

S.Ct. 1307, 1311, 158 L.Ed.2d 1 (2004); *Hobbie v. Unemployment Appeals Comm'n,* 480 U.S. 136, 144–45, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987) ("[T]he government may (and sometimes must) accommodate religious practices and ... may do so without violating the Establishment Clause."). While government unquestionably may take positive steps to protect the free exercise of religion, it must avoid going so far in this goal as to adopt a preference for one religion or for religion generally.

In our view, if RLUIPA means what the district court believes it does, a serious question arises whether it goes beyond the proper function of protecting the free exercise of religion into the constitutionally impermissible zone of entwining government with religion in a manner that prefers religion over irreligion and confers special benefits on it. *See City of Boerne v. Flores,* 521 U.S. 507, 537, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (Stevens, J., concurring).[4] We have no need to decide the question at this time because the judgment must in any event be vacated for the reasons set forth in Parts 1 and 3 of this opinion. We nevertheless commend these considerations to the court's attention on remand.

### 3. *Compelling governmental interest*

■ Even if the Board's action constituted a "substantial burden on ... religious exercise," it might nonetheless be permitted under RLUIPA if the government "demonstrates that imposition of the burden ... is in furtherance of a compelling governmental interest" and imposed in the least restrictive manner. 42 U.S.C. § 2000cc(a)(1). As noted, the district court concluded for three reason that the concerns expressed by the Board did not represent compelling governmental interests. We express no view (and have no view) as to whether the district court was correct in its factual findings underlying this conclusion. Regardless of whether the district court was right or wrong in these assessments, they are not, so far as we can see, compelled by the record, and cannot therefore support a summary judgment. The Board had the right to submit this evidence to the factfinder at trial.

We comment briefly on the three bases upon which the court relied for its conclusion that no compelling governmental interest was involved.

a. *Traffic concerns never compelling.* As one of its reasons, the court asserted that "traffic concerns have never been deemed compelling government interests." *Westchester Day Sch.,* 280 F.Supp.2d at

---

4. The legislative history of RLUIPA suggests that Congress's view of its provisions was less broad than that espoused by the district court. The Joint Statement of Senators Hatch and Kennedy introduced upon the Senate's consideration of RLUIPA, noted that, despite the broad definition of "religious exercise" as the "use, building, or conversion" of real property for religious exercise,

> not every activity carried out by a religious entity or individual constitutes "religious exercise." In many cases, real property is used by religious institutions for purposes that are comparable to those carried out by other institutions. While recognizing that these activities or facilities may be owned, sponsored or operated by a religious institution, or may permit a religious institution to obtain additional funds to further its religious activities, this alone does not automatically bring these activities or facilities within the bill's definition or [sic] "religious exercise." For example, a burden on a commercial building, which is connected to religious exercise primarily by the fact that the proceeds from the building's operation would be used to support religious exercise, is not a substantial burden on "religious exercise."

146 Cong. Rec. S7774–01, S7776 (July 27, 2000).

242. The assertion seems to mean that traffic concerns are by nature too trivial as a matter of law to satisfy the test of a "compelling government interest."

We know of no controlling authority, either in the Supreme Court or any circuit holding that traffic problems are incapable of being deemed compelling. It is true that one circuit opinion in the Eighth Circuit recited that "interests in traffic safety and aesthetics ... have never been *held to be* compelling." *Whitton v. City of Gladstone*, 54 F.3d 1400, 1408 (8th Cir.1995) (emphasis added). However, the fact that the case reports do not reveal any case in which a court has found traffic concerns compelling does not support the proposition that traffic concerns by nature cannot be compelling. While it is true that there are no authoritative cases holding that a traffic concern satisfies the "compelling interest" test, nor are there authoritative cases holding that a traffic concern cannot satisfy the test. In fact, there are very few rulings discussing the question, and none that we know arising under RLUIPA.

We make no ruling on whether the traffic concerns specified by the Board are compelling or on the broader question whether traffic concerns can ever represent a "compelling concern." Prudence counsels against reaching out to establish a far-reaching constitutional rule when there are many other bases upon which this case may ultimately be decided. *See, e.g., Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Jean v. Nelson*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (finding there was no need for Court of Appeals to address constitutional issues because applicable statutes and regulations rendered that inquiry unnecessary); *see generally Ashwander v. T.V.A.*, 297 U.S. 288, 346–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

b. *The persuasiveness of experts and the good faith of the Board.* The district court gave two additional reasons for its conclusion that the Board's denial did not further a compelling governmental interest. First, the court said it was "unpersuaded by the opinions of additional experts relied on by [the Board]," and rejected the Board's view that insufficient parking spaces would pose any "direct and immediate threat to public health, safety or welfare," in view of the Board's reversal of its earlier suggestion of a decrease in the number of parking spaces. *Westchester Day Sch.*, 280 F.Supp.2d at 242. Second the court found that the Board was not acting in good faith, but that its "abrupt reversal of its prior approval ... was a reaction to belated public outcry, a paradigm of what has been referred to as the NIMBY (Not In My Back Yard) syndrome." *Id.* at 243.

The district judge, who patiently and conscientiously made efforts to mediate the dispute between the School and the Board, undoubtedly believed he had excellent reasons to reject the conclusions advanced by the Board's traffic experts, and to doubt the good faith of the Board's conclusion, attributing the Board's reversal of position to community pressure rather than good faith appraisal of governmental concerns. These, however, were essentially findings of fact. Had the court reached these findings after a trial in which it served as the trier of fact, we have no reason to doubt that we would affirm such findings.

But this was a grant of summary judgment. The issue was not whether the

factfinder would reject the defendants' experts and the Board's good faith. The issue was rather whether the record compelled their rejection. The court neither demonstrated, nor asserted, that no reasonable trier of fact could, upon the record presented, find otherwise. Nor do we see any reason why a trier of fact might not credit the Board's reliance on its experts and its good faith generally.

## Conclusion

The judgment is VACATED and the matter REMANDED for further proceedings.