Argued and submitted January 11, decision of Court of Appeals affirmed; case remanded to Land Use Board of Appeals for further proceedings May 5, 2005

# CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,
*Petitioner on Review,*

*v.*

## CITY OF WEST LINN,
*Respondent on Review,*

*and*

## UNITED STATES OF AMERICA,
*Intervenor on Judicial Review,*

*and*

## Robert FULTON,
Susan Fulton, Gregg Crawford, Holly Crawford, Walter Swanson, Kathi Swanson, Dale Krug, Colleen Krug and Steven Wilkes,
*Intervenor-Respondents at LUBA.*

(LUBA No. 2002-155; CA A122194; SC S51504)

111 P3d 1123

I. Franklin Hunsaker, of Bullivant Houser Bailey, PC, Portland, argued the cause and filed the briefs for petitioner on review. With him on the briefs were James H. Bean, of Lindsay Hart Neil & Weigler, LLP, Portland, and Von G. Keetch and Matthew K. Richards, of Kirton & McConkie, Salt Lake City.

Timothy V. Ramis, of Ramis, Crew, Corrigan & Bachrach, LLP, Portland, argued the cause and filed the briefs for respondent on review.

Lowell V. Sturgill, Jr., Appellate Staff, Department of Justice, Washington, D.C., argued the cause and filed the brief for Intervenor on Judicial Review United States of America. With him on the brief were Peter D. Keisler, Assistant Attorney General, Herbert C. Sundby, Attorney, Department of Justice, and Mark Stern, Attorney, Appellate Staff, Department of Justice, Washington, D.C..

Wendie L. Kellington, Lake Oswego, filed the brief for *amicus curiae* The Becket Fund for Religious Liberty. With her on the brief were Roman P. Storzer, Anthony R. Picarello, Jr., and Derek L. Gaubatz, Washington, D.C.

Barry Adamson, Lake Oswego, filed the *amicus curiae* brief for himself.

BALMER, J.

**BALMER, J.**

In this land use dispute, the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints (the church) challenges the City of West Linn's (the city's) denial of a conditional use permit (CUP) to build a new meetinghouse. The church argues that the denial constituted a "substantial burden" on religious exercise as that term is used in the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 USC §§ 2000cc - 2000cc-5 (2000); which prohibits a government entity from implementing a land use regulation that imposes such a burden unless imposing that burden furthers a compelling governmental interest and is the least restrictive means of achieving that interest. On review of the city's decision, the Land Use Board of Appeals (LUBA) agreed with the church in part. The city sought judicial review, and the Court of Appeals reversed, holding that the city's decision did not violate RLUIPA. *Corp. of Presiding Bishop v. City of West Linn*, 192 Or App 567, 86 P3d 1140 (2004). We allowed the church's petition for review. For reasons that we explain below, we affirm the Court of Appeals.

We take the facts from the Court of Appeals' decision and the record. The church has no meetinghouse in West Linn, and many of its congregants who live in West Linn travel to Lake Oswego to attend church. The Lake Oswego congregation has grown, and the meetinghouse there is crowded. To relieve the crowding, the church sought to construct a meetinghouse in West Linn on a 5.64-acre tract that was zoned Single Family Residential (R1). The tract is bordered on the north by undeveloped property, on the south by Rosemont Road (a local arterial), on the east by Shannon Lane (a local street), and on the west by Miles Drive, a dead-end street. The area surrounding the site is developed mainly with single-family homes.

The city allows the construction of religious buildings in R1 zones if the owner obtains a CUP. The church applied for a CUP and submitted a site plan proposing to build the meetinghouse on a 3.85-acre parcel that it would create by subdividing the existing 5.64-acre tract. That parcel would consist of the eastern approximately two-thirds of

the existing tract. The church planned to divide the remaining 1.79 acres into two parcels: a parcel in the northwest corner containing an existing home with a yard, and a parcel on the southwest that would be used to extend Miles Drive and connect it with Rosemont Road. The plan contemplated a single-story meetinghouse, 16,558 square feet in area and 28 feet tall, surrounded by parking lots on three sides. Together, the meetinghouse and parking lot would cover 2.02 of the 3.85 acres, and the plan contemplated that a drainage swale and landscaping would occupy the remainder. At the most narrow points, the plan allowed 26 feet between the parking lot and the northern property line and 30 feet between the eastern side parking lot and Shannon Lane.

The city planning staff worked with the church to refine the plan and recommended that the city planning commission approve a revised plan that included more vegetation to screen the parking lot from Shannon Lane. The church agreed to the revisions and submitted a revised plan. The planning commission held hearings at which it heard witnesses for and against the church's proposal and evaluated the proposal in light of the city's Community Development Code (CDC). The CDC provisions include the following:

"60.070   APPROVAL STANDARDS AND CONDITIONS

"A.   The Planning Commission shall approve, approve with conditions, or deny an application for a conditional use * * * based on findings of fact with respect to each of the following criteria:

"1.   The site size and dimensions provide:

"* * * * *

"b.   Adequate area for aesthetic design treatment to mitigate any possible adverse effect from the use on surrounding properties and uses.

"2.   The characteristics of the site are suitable for the proposed use considering size, shape, location, topography, and natural features.

"* * * * *

"4.   All required public facilities have adequate capacity to serve the proposal."

The CDC also provides, for all development proposals in the city, that

> "[t]he proposed structure(s) scale shall be compatible with the existing structure(s) on site and on adjoining sites. Contextual design is required. Contextual design means respecting and incorporating prominent architectural styles, building lines, roof forms, rhythm of windows, building scale and massing, materials and colors of surrounding buildings in the proposed structure."

CDC 55.100(B)(6)(b).

Ultimately, the commission voted unanimously to deny the application. Its written decision stated that (1) the application did not satisfy CDC 60.070(A)(1)(b) because the size and dimensions of the lot did not allow for adequate buffering to mitigate the aural and visual impacts on the neighborhood that a meetinghouse of that size would create; (2) the application did not satisfy CDC 60.070(A)(2) because the meetinghouse would be "heavily used" and was therefore unsuitable for a residential neighborhood; (3) the application did not satisfy CDC 60.070(A)(4) because the roads in the proposed location were insufficient to handle the traffic that the meetinghouse would generate; and (4) the application did not satisfy CDC 55.100(B)(6)(b) because the scale of the proposed meetinghouse was "nearly five times the size" of the average building in the area. The commission also rejected the church's claim that RLUIPA prohibited the denial, because it concluded that the denial did not impose a substantial burden on religious exercise.

The church appealed to the city council, which held its own hearings and accepted additions to the written record. The council then rejected the application, primarily because it found that the lot was too small for a facility the size of the proposed meetinghouse. That inadequacy, it concluded, created detrimental impacts that could not be reconciled with the CDC criteria. In particular, the council found that there was not enough space for buffers to mitigate the aural and visual impact of the building on the neighborhood (CDC 60.070(A)(1)(b)) and that the small lot with minimal buffering rendered the proposed use unsuitable for a residential area (CDC 60.070(A)(2)). Regarding CDC 55.100(B)(6)(b),

the council concluded that, although the scale of the proposed meetinghouse was incompatible with the residential neighborhood, compatibility is not required if the building is "adequately separated from other buildings by distance, screening, [or] grade variations, or is part of a development site that is large enough to set its own style of architecture." CDC 55.100(B)(6)(d).

Although the council rejected the application primarily because the parcel was too small to accommodate the buffers of vegetation and distance that the CDC required for a meetinghouse of that size and in that residential location, the council noted that it could approve a site plan that included a building of the same size on a larger lot with adequate buffering. The council found that there was no apparent obstacle to the church's using more than the 3.85 acres that the plan contemplated.[1] Based on those facts, the council concluded that RLUIPA did not prevent it from denying the application, because there was no substantial burden on the church's religious exercise and because, even if the denial had imposed a substantial burden, the city's interest in maintaining the quality of residential neighborhoods was sufficiently compelling to allow denial.[2]

The church appealed to LUBA, claiming that RLUIPA required the city to state conditions of approval rather than deny the application. LUBA concluded that there was substantial evidence in the record to support the city's findings that the application failed to comply with each of the CDC provisions that it had cited and that the church had failed to include the proper documentation for the noise study. However, LUBA ruled against the city on RLUIPA grounds, holding that the city's denial of the CUP had violated the church's rights under RLUIPA. *Corporation Presiding Bishop v. City of West Linn*, 45 Or LUBA 77 (2003).

---

[1] In fact, the church had notified the city that it had "already arranged" to acquire more of the existing 5.64-acre tract if necessary.

[2] In addition to its other conclusions, the city noted that the church's application was incomplete because it did not include data to show that the proposed use would comply with the city's noise regulations, but it determined that it would not be difficult for the church to present a complete noise study. The council also disagreed with the planning commission that the traffic impact of the proposed meetinghouse was unacceptable under CDC 60.070(A)(4).

LUBA stated that, in general, federal courts had defined a "substantial burden" as a burden that "forces adherents of a religion to refrain from religiously motivated conduct." *Id.* at 105 (internal quotation marks omitted). In LUBA's view, the city's denial of a CUP had imposed a burden on the church and its members by impairing the church's ability to build a meetinghouse. *Id.* at 105-06. LUBA concluded that that impairment constituted a substantial burden on the church's religious exercise under RLUIPA. *Id.* at 106. LUBA then determined that, even if the city had the compelling governmental interest that it had asserted, denying the CUP was not the least restrictive means of serving that interest. *Id.* at 108-10. Finally, LUBA rejected the city's argument that RLUIPA violated the First Amendment to the federal constitution. *Id.* at 112, 114. LUBA therefore reversed the decision of the city council and remanded to the city with instructions to consider whether the application could be approved with "reasonable conditions of approval." *Id.* at 116.

As noted, the city appealed and the Court of Appeals reversed. The court rejected LUBA's determination that the city had imposed an impermissible "burden" on the church by impairing its ability to build a meetinghouse. Instead, the relevant "burden" for RLUIPA purposes, the court held, was "the burden of being prevented from implementing the particular design proposal at issue plus, logically, the burden of submitting a new application for a modified proposal." *Corp. of Presiding Bishop*, 192 Or App at 587.

The court then reviewed United States Supreme Court and lower federal court cases interpreting the meaning of "substantial burden" under the First Amendment's Free Exercise Clause; under RLUIPA's predecessor, the Religious Freedom Restoration Act (RFRA), 42 USC §§ 2000bb - 2000bb-4 (2000); and under RLUIPA itself. The court concluded that the burden on the church was not substantial because its members were not turned away from services at locations outside West Linn, because there was no reason to believe that the city would not approve a reconfigured application for a CUP, and because there was no evidence that the city was biased against the church. *Id.* at 597-99. In the court's view, that result was consistent with the federal cases

that it had described. Because it found no substantial burden under RLUIPA, the Court of Appeals did not consider whether the city had a compelling governmental interest, whether it had used the least restrictive means of implementing its interest, or whether RLUIPA violated the First Amendment. *Id.* at 599.

■     Having described the facts of this case and the procedural steps that brought it to this court, we now turn to the merits of the church's RLUIPA claim, beginning with an overview of RLUIPA and its complicated history. In a series of cases prior to 1990, the United States Supreme Court analyzed Free Exercise Clause[3] claims by asking whether the challenged statute or regulation imposed a substantial burden on religious exercise; if so, the regulation passed constitutional muster only if it furthered a "compelling governmental interest." *See, e.g., Sherbert v. Verner,* 374 US 398, 403-08, 83 S Ct 1790, 10 L Ed 2d 965 (1963) (applying that test). In 1990, the Court held, however, that government enforcement of "valid and neutral law[s] of general applicability" that incidentally restrict religious exercise did not violate the Free Exercise Clause even if they burden religious exercise. *Employment Division, Dep't of Human Resources v. Smith,* 494 US 872, 879-82, 110 S Ct 1595, 108 L Ed 2d 876 (1990).

In response to *Smith,* Congress in 1993 enacted RFRA, which purported to restore the pre-*Smith* test. RFRA, however, was short-lived. In *City of Boerne v. Flores,* 521 US 507, 117 S Ct 2157, 138 L Ed 2d 624 (1997), the Court struck down RFRA, holding that Congress had exceeded its power under Section 5 of the Fourteenth Amendment by enacting that statute. *City of Boerne,* 521 US at 536. The Court based its decision, in part, on the absence of congressional findings showing the level of discrimination against religious exercise that would justify congressional action to protect that right. *Id.* at 530-31. Congress responded to *City of Boerne* by enacting RLUIPA, which generally requires application of the *Sherbert* substantial burden test to statutes and regulations

---

[3] The Free Exercise Clause of the First Amendment to the federal constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"

involving religious exercise in two specific areas: land use and institutionalized persons. Congress developed a record in which it documented discrimination against religious exercise in those areas and identified the need for a federal statute to protect religious exercise.[4]

We now turn to the provisions of RLUIPA that are relevant in this case. 42 USC § 2000cc(1)(a) provides, in part:

"(a)   Substantial burdens

"(1)   General rule

"No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

"(A)   is in furtherance of a compelling governmental interest; and

"(B)   is the least restrictive means of furthering that compelling governmental interest."

The structure of this provision requires a person who contends that a land use regulation is invalid because it violates RLUIPA to demonstrate that a government actor has implemented the land use regulation in a manner that imposes a "substantial burden" on the proponent's "religious exercise." Where that is shown, the land use regulation must yield, unless the record shows that it furthers a compelling governmental interest and does so in the least restrictive manner possible.

RLUIPA defines "religious exercise" as follows:

"(7)   Religious exercise

"(A)   In general

---

[4] The Court has not addressed the constitutionality of RLUIPA. However, on March 21, 2005, it heard oral argument in *Cutter v. Wilkinson*, 349 F3d 257 (6th Cir 2003), *cert granted*, 125 S Ct 308 (2004), in which a prisoner challenged the constitutionality of RLUIPA's "institutionalized persons" provisions.

"The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief.

"(B)   Rule

"The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose."

42 USC § 2000cc-5(7).

The threshold—and, we conclude, the dispositive— issue in this case is whether, under RLUIPA, the city's denial of the CUP imposed a substantial burden on religious exercise.[5]

██  When this court construes a federal statute such as RLUIPA, we follow the methodology prescribed by the federal courts. *Hagan v. Gemstate Manufacturing, Inc.*, 328 Or 535, 545, 982 P2d 1108 (1999). Federal courts generally determine the meaning of a statute by examining its text and structure and, if necessary, its legislative history. *See, e.g., Dep't of Rev. v. ACF Indus., Inc.*, 510 US 332, 339-46, 114 S Ct 843, 127 L Ed 2d 165 (1994) (examining text, structure, and legislative history of federal statute).

_____

[5] RLUIPA also provides that the substantial burden provision of 42 USC § 2000cc(1)(a) applies only when

"the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved."

42 USC § 2000cc(a)(2)(C).

The city asserted before the Court of Appeals that RLUIPA's substantial burden provision does not apply to its land use decision because the CDC provisions are "rules of general applicability," not "individualized assessments" as described in 42 USC § 2000cc(a)(2)(C). The Court of Appeals disagreed, holding that the city's decision in this case constitutes an individual assessment. *Corp. of Presiding Bishop*, 192 Or App at 584. Because neither party sought review of the Court of Appeals decision on that issue, we decline to address it. ORAP 9.20(2). For the purposes of this opinion, we assume without deciding that the city's denial of the CUP constituted an individualized assessment as that term is used in 42 USC § 2000cc(a)(2)(C).

As noted, RLUIPA prohibits only land use regulations that impose a "substantial burden" on religious exercise, but, in contrast to certain other terms in the statute, RLUIPA provides no special definition of "substantial burden." However, it is apparent from the sequence of court decisions and congressional enactments discussed above that Congress used the term "substantial burden" because that was the term that the Court had used in *Sherbert* and other Free Exercise cases decided before *Smith*. The Court has noted that, when Congress enacts statutes using terms of art that the Court previously has interpreted, Congress intends that those terms have the same meaning. *McDermott Int'l, Inc. v. Wilander*, 498 US 337, 342, 111 S Ct 807, 112 L Ed 2d 866 (1991) (interpreting Congress's use of "seaman" in Jones Act consistently with Court's pre-Act interpretations). Indeed, we are particularly certain of Congress's intent here because Senators Hatch and Kennedy issued a joint statement summarizing the congressional findings on which RLUIPA was based and noting that RLUIPA "does not include a definition of the term 'substantial burden' because * * * that term * * * should be interpreted by reference to Supreme Court jurisprudence." 146 Cong Rec S7774 (daily ed July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy).

Based on the foregoing—and like the federal courts that previously have construed RLUIPA—we turn first to the Supreme Court's Free Exercise Clause cases to determine what constitutes a substantial burden on religious exercise. We then consider several federal cases construing the provisions of RLUIPA that relate to land use regulations. This summary of federal case law will provide an understanding of the term "substantial burden" that we can then apply to assess whether denial of the CUP imposed an impermissible burden on the church or its members in this case.

In *Sherbert, Thomas v. Review Board*, 450 US 707, 101 S Ct 1425, 67 L Ed 2d 624 (1981), and *Hobbie v. Unemployment Appeals Comm'n*, 480 US 136, 107 S Ct 1046, 94 L Ed 2d 190 (1987), the Court reviewed the claims of plaintiffs who had left their jobs for religious reasons and subsequently had been denied unemployment compensation on

the grounds that they had not had "good cause" to stop working.[6] In all three of those cases, the Court held that the denial of unemployment benefits constituted a substantial burden on the free exercise of religion because it had "pressure[d]" a religious adherent to choose between an article of faith and a government benefit. *Sherbert*, 374 US at 404; *Thomas*, 450 US at 717-18; *Hobbie*, 480 US at 140-41. In other words, in the unemployment cases, a "substantial burden" was one that pressured someone to forgo or modify the expression of a religious belief.[7]

Since the passage of RLUIPA, lower federal courts have decided several cases that we find instructive because of their similarity to this case. In *Westchester Day School v. Village of Mamaroneck*, 386 F3d 183 (2d Cir 2004), a religiously affiliated school challenged, on RLUIPA grounds, the village's denial of a permit that would allow the school to construct a new building and renovate others. The Second Circuit found that the denial did not create a substantial burden on the school's religious exercise because the village

> "did not purport to pronounce the death knell of the School's proposed renovations in their entirety, but rather to deny only the application submitted, leaving open the possibility that a modification of the proposal, coupled with the submission of satisfactory data found to have been lacking in the earlier proceedings, would result in approval."

*Id.* at 188. The court noted that the denial of a specific proposal may constitute a substantial burden when the denial seems disingenuous, when curing the problems that formed the basis for the denial "would impose so great an economic

---

[6] The plaintiffs in *Sherbert* and *Hobbie* were fired because they were Seventh-Day Adventists whose faith required them to observe a Saturday Sabbath. In *Thomas*, the plaintiff quit because his job required him to manufacture war materials in violation of his beliefs as a Jehovah's Witness.

[7] The church asserts that the "test" that the Court articulated in *Sherbert* was whether the government action had a "tendency to inhibit" religious exercise. That overstates the Court's holding in *Sherbert* and later cases, which instead focused on whether the government action at issue had a coercive effect, as we describe above. The *Sherbert* decision only used the words "tendency to inhibit" in one footnote in which it gave examples of government actions that had been held to violate the Free Exercise Clause. 374 US at 404 n 6. More importantly, the Court did not adopt a "tendency to inhibit" test in *Sherbert* or use that test to decide *Sherbert* or any other case.

burden as to make amendment unworkable," or when the cure itself affected religious exercise directly. *Id.* at 188 n 3. However, the court found that in that case a mere denial, without more, did not constitute a substantial burden.

In *San Jose Christian College v. City of Morgan Hill*, 360 F3d 1024 (9th Cir 2004), the Ninth Circuit considered a religious college's challenge to the city's denial of its application for a zoning variance that would have allowed an educational facility in an area zoned for hospitals. The application's estimates of the number of students that would use the facility were inconsistent, and the city requested additional information. The college did not provide the requested information, and the city denied the college's application. The court determined that the city's requirement did not impose a substantial burden because the city's action "merely require[d the] College to submit a *complete* application, as is required of all applicants." *Id.* at 1035 (emphasis in original). The court noted that "[s]hould [the] College comply with this request, it is not at all apparent that its re-zoning application will be denied." *Id.*

In *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F3d 1214 (11th Cir 2004), *cert den*, 125 S Ct 1295 (2005), the city sought to enjoin synagogues from holding services in a hotel meeting room and a conference room leased from a bank. The injunction would have required the synagogues to relocate farther away from their congregants. The synagogues argued that the injunction would constitute a substantial burden because the religious beliefs of the congregants required them to walk to synagogue. The Eleventh Circuit held that requiring the congregants to walk the extra blocks did not constitute a substantial burden. *Id.* at 1228.

■ We agree with the reasoning of the cases discussed above, and, on that basis, we conclude that a government regulation imposes a substantial burden on religious exercise only if it "pressures" or "forces" a choice between following religious precepts and forfeiting certain benefits, on the one hand, and abandoning one or more of those precepts in order to obtain the benefits, on the other. *See Sherbert*, 374 US at 404 (stating that test). With that understanding, we now return to the facts of this case.

As noted, the church urges us to conclude that the city's denial of the CUP in the present case was a substantial burden on religious exercise. We agree with the church that the denial of the CUP has several adverse consequences for the church's effort to build a meetinghouse. The city's decision requires the church to submit a new permit application that reflects the use of a greater portion of an available lot, provides for additional buffering, and includes all of the required noise studies. That resubmission necessarily will impose additional expenses on the church. It also will create delay, during which church members will continue to face crowded conditions at their Lake Oswego meetinghouse and the longer drive required to get there.

Those hardships, however, do not constitute "substantial burden[s]" under RLUIPA. The church already has indicated that it would be possible to acquire more land to provide the necessary buffering space between the parking lot and Shannon Lane that the city has requested. The expenses associated with submitting a new application do not constitute a substantial burden in and of themselves, nor does the requirement of submitting the application. The siting of a large building often involves multiple applications by the builder, changes requested by a city planning commission or city council based on zoning and similar requirements, and related legal, architectural, and engineering costs. The city gave specific reasons for denying the first application, and nothing in the record indicates that the city would not approve a revised application that met its concerns. There is no evidence in the record to suggest that the crowded conditions at the meetinghouse have forced the church to turn away anyone who wished to attend church or to eliminate or reduce church activities. Nor is there any evidence in the record to suggest that the city's denial was motivated by religious animus. In short, nothing in the record suggests that requiring the church to submit a new application would pressure the church to forgo or modify the expression of a religious belief, as described in *Sherbert, Thomas,* and *Hobbie.* Moreover, the hardships imposed on the church are likely to be relatively short-lived.

Because we conclude that the city's denial of the CUP does not constitute a substantial burden on religious

exercise by the church or its members, we do not consider whether a compelling government interest supported that denial or whether that denial is the least restrictive means to further that interest. And, because we conclude that the city's actions do not violate RLUIPA, we need not determine whether RLUIPA violates the First Amendment.[8]

The decision of the Court of Appeals is affirmed. The case is remanded to the Land Use Board of Appeals for further proceedings.

---

[8] We also do not address the church's argument that ORS 197.522 requires a local governmental entity to approve applications or impose conditions of approval on them. The Court of Appeals noted that neither party had raised that argument below, *Corp. of Presiding Bishop*, 192 Or App at 587 n 13, and we agree.